# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

BJORN JOHNSON CONSTRUCTION, LLC,

                    Plaintiff,

    v.

SOMPO INTERNATIONAL HOLDINGS, LTD, and LEXON INSURANCE CO.,

                    Defendant.

**Case No. 2:22-cv-19-BMM**

**ORDER**

## INTRODUCTION

Plaintiff Bjorn Johnson Construction LLC ("BJC") filed this action claiming breach of contract, breach of the implied duty of good faith and fair dealing, and unfair claim settlement against Defendants Sompo International Holdings LTD ("Sompo") and Lexon Insurance Company ("Lexon"). (Doc. 13.) Sompo filed a combined motion to strike the jury demand, the breach of contract claim, and the alleged damages based on "diminished bond capacity" (Doc. 15.) The Court held a hearing on the motion to dismiss on June 22, 2022. (Doc. 30.)

## BACKGROUND

BJC is a limited liability construction company based in Missoula County, Montana. Sompo is a New York company providing surety services for work to be performed in Jefferson County, Montana.

BJC entered into a General Agreement of Indemnity ("GAI") with Lexon in 2017. Sompo purchased Lexon and assumed the GAI with BJC in 2018. Two provisions of the GAI are relevant in this case. The first provision states that Sompo may charge BJC for any and all disbursements made in good faith (Doc. 16-2 at 1 (Section 2)). The GAI requires BJC to accept the voucher or any evidence of payment as prima facie evidence that the payment was made in good faith and that BJC stands liable for the payment. (*Id.*) The second provision empowers Sompo with the exclusive right to settle claims brought against the bond. (*Id.* at 2 (Section 7).) The GAI provides that Sompo's decision binds BJC (*Id.*)

The Montana Department of Transportation awarded BJC the role of general contractor of the South of Boulder - South Project by the Montana Department of Transportation (the "Project") in 2019. Lexon issued a contract bond for the Project to BJC for $5,825,119.23 on January 22, 2020 (the "Bond"). Sompo, by their purchase of Lexon, assumed liabilities and obligations under the bond. The Project consisted of grade, gravel, plant mix surfacing, S&C and drainage improvements,

and other small improvements on State Secondary Route 399 in Jefferson County, Montana.

M.K Weeden Construction, Inc., a Montana corporation based in Lewistown, Montana ("M.K. Weeden"), submitted a proposal to BJC to subcontract on the Project on February 3, 2020. BJC accepted M.K. Weeden's proposal for $2,790,285.65. M.K. Weeden became a subcontractor under BJC on February 21, 2020.

The following issues arose between M.K. Weeden and BJC: M.K. Weeden contracted back to BJC part of the Project due to M.K. Weeden's inability to complete the requisite task; M.K. Weeden failed to provide promised trucks; and M.K. Weeden de-mobilized workers earlier than necessary.

M.K. Weeden put Sompo on notice on July 29, 2020, for failure to pay a claim on the bond of $236,069.20. Sompo and M.K. Weeden eventually agreed to an amount of $138,059.58. M.K. Weeden sent additional notice to Sompo for a bond claim in the amount of $1,095,597.82 on November 30, 2020. M.K. Weeden claimed that it was further owed $350,628.78 in the next 30 days. BJC told Sompo that BJC owed M.K. Weeden roughly $600,000, but would not pay any amount over that sum due to M.K. Weeden's failure to complete the work for which it had been hired. Sompo paid M.K. Weeden the full $1,095,597.82 that it had requested. Sompo's Assistant Vice President Lisa Jennings allegedly told BJC that the payment was

made as "punishment" for BJC's failure to pay M.K. Weeden the $600,000 owed to them. (Doc. 13 at 2.24.)

Sompo demanded payment from BJC for the full amount that Sompo had paid M.K. Weeden. BJC could not pay the full amount. Sompo responded by reducing BJC's bonding capacity from $6,500,000 to $2,000,000 and then again from $2,000,000 to $1,000,000. BJC alleges that Sompo violated the good faith provision in the GAI. BJC contends that Sompo violated their contract and that this breach led to BJC's diminished bonding capacity which caused damages of no less than $2,400,000.

## LEGAL STANDARD

### *Failure to state a claim*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim is plausible on its face when "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a Rule 12(b)(6) motion, a court must accept all allegations of material fact contained in the complaint as true. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). A court does not weigh the facts at the Rule 12(b)(6) stage, but merely assesses the sufficiency of Plaintiff's allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)

## ANALYSIS

### I.   Sompo's unopposed motion to dismiss the Jury Demand.

BJC does not object to Sompo's motion to dismiss the Jury Demand. The Court will grant Sompo's motion to dismiss the Jury Demand (Doc. 15).

### II.   BJC alleges sufficient facts to make a plausible breach of contract claim.

The Court determines that BJC states a plausible claim that Sompo violated the good faith provision of the GAI and potentially breached the GAI. The relevant provision of the GAI provides as follows:

> ln accounting by the Surety for payments, the indemnitors agree that the Surety shall be able to charge for any and all disbursements made by it in good faith under the belief that it is or was necessary or expedient to make such disbursements, whether or not such liability, expediency or necessity existed.

(Doc. 16-2 at ¶ 2.)

BJC argues that Sompo acted in bad faith in paying M.K. Weeden in excess of $1 million dollars. BJC alleges in its Complaint that Sompo ignored BJC's continued warnings that M.K. Weeden's claims against the bond were fault. (Doc. 13 at 2.26.) BJC contends that Sompo decided to pay the claims regardless of the warnings in an amount well above what it really owed to M.K. Weeden. (Doc. 13 at 2.22, 2.24.) BJC further alleges as evidence of bad faith that Sompo's Assistant Vice President Lisa Jennings told BJC that Sompo had made the payment to M.K. Weeden as "punishment" for BJC not paying M.K. Weeden the undisputed amount. (*Id.*) A claim becomes binding and BJC only must accept that it was proper if Sompo acted in good faith. These alleged facts, taken as true, present a plausible claim that Sompo acted in bad faith by disbursing funds to M.K. Weeden.

Sompo defends its position largely relying on provision 7, of the GAI. Provision 7 grants the surety "the exclusive right . . . to determine whether any claim or demand should be settled, defended or compromised." (Doc. 16-2 at ¶ 7.) Provision 7 further states that the surety's decision "shall be binding and conclusive upon the indemnitors." (*Id.*) Sompo also argues that the good faith provision cited by BJC applies only to the indemnification obligation. Sompo contends that these provisions, taken together, allow Sompo to disburse payment to any claim it sees fit with the caveat that Sompo only can ask BJC to pay that claim if Sompo acted in good faith.

Sompo argues that BJC's allegations arose solely from the issue of whether Sompo investigated the M.K. Weeden claim properly. Sompo cites several cases where courts have determined that a failure to investigate by a surety does not rise to the level of bad faith. *Travelers Cas. & Surety Company v. DiPizio*, 2018 WL 2939013 at *10 (W.D.N.Y. Mar. 12, 2018) (citation omitted); *see also General Acc. Ins. Co. of America v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 518 (S.D.N.Y. 1997); *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 838 A.2d 135, 155 (Conn. 2004).

Sompo's cases provide some persuasive authority, but BJC alleges that it warned Sompo numerous times about the faultiness of the M.K. Weeden claims. BJC alleges that Sompo still failed to investigate. The cases cited by Sompo are differ from the present case because they involved a duty to investigate as a general matter. The current circumstances, however, involve a surety making payments after failing to investigate, despite given multiple warnings that the claim was fraudulent. (Doc. 13 at 2.26.) BJC's allegations, when taken as true, form a plausible claim that Sompo's lack of investigation constitutes a lack of good faith.

In *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, a case cited by Sompo, the Supreme Court of Connecticut notes that "failure to investigate, standing alone, and not accompanied by other evidence of an improper motive, is not enough to constitute bad faith." 838 A.2d 135, 155 (Conn. 2004). Sompo's failure to

investigate does not stand alone. BJC alleges that an Assistant Vice Principal for Sompo justified the payment of the M.K. Weeden claim as "punishment." (Doc. 13 at 2.24.) An allegation that Sompo forced BJC to pay as "punishment," if true, indicates a lack of good faith as to the investigation into M.K. Weeden's claim. (Doc. 13 at 2.24.)

Sompo also relies on *Travelers Casualty and Surety Company of America v. Highland Partnership, Inc., et al.,* 2012 WL 5928139 (S.D. Cal. Nov. 26, 2012). The *Travelers* court dismissed a breach of contract claim because the implied covenant of good faith and fair dealing did not overrule the express terms of the indemnity agreement used by the parties. *Id.* at *6. *Travelers* differs greatly from the present case. *Travelers* involved a question of implied good faith. The good faith question here arises from an explicit clause in the GAI between BJC and Sompo. *Travelers* proves less persuasive under this circumstance.

BJC has alleged sufficient facts that, when taken as true, state a plausible claim that Sompo breached the contract. The Court will deny Sompo's motion to dismiss BJC's breach of contract claim.

## III. BJC alleges sufficient facts to make a claim for damages based on "diminished bond capacity."

BJC has alleged sufficient facts that when taken as true show that damages for future loss of profit were plausibly caused by Sompo's decision to reduce BJC's bonding capacity. Sompo provides no statute or case suggesting that damages for

diminished bonding capacity should be prohibited. BJC defends its claim to damages by alleging that Sompo's bad faith action of disbursing the payment to M.K. Weeden and subsequently forcing BJC to pay, proximately caused its damages. It appears plausible that Sompo acted with bad faith. (Doc. 13 at 2.28.) BJC must now plausibly connect the alleged bad faith to its damages.

BJC argues that Sompo acted in bad faith by charging BJC $400,000 more than what BJC owed to M.K. Weeden. BJC could not pay the entire amount and, as a result, became indebted to Sompo. BJC argues that Sompo reduced BJC's bonding capacity because of the debt caused by Sompo's bad faith distribution to M.K. Weeden. BJC alleges that its resulting diminished bond capacity prevented BJC from bidding on other high-value projects. These allegations form a plausible claim that Sompo's failure to act in good faith proximately caused BJC's damages.

BJC next defends its damages claim by connecting its damages to Sompo's unfair settlement practices. (*Id.*) BJC asserts that Sompo violated Montana Code Annotated § 33-18-201 by failing to conduct a reasonable investigation and neglecting to effectuate a prompt, fair, and equitable settlement. BJC contends that it could not pay Sompo, as direct cause of these violations, and Sompo subsequently reduced BJC's bonding capacity. (*Id.* at 2.27, 2.28.)

Sompo denies that the alleged unfair claim settlements led to BJC's damages. Sompo argues that section 11 of the GAI grants it discretion to reduce BJC's bonding

capacity. Section 11 provides that Sompo, "at its option may decline to execute or participate in, or procure the execution of, any Bond(s), or changes to any existing Bond(s)." (Doc. 16-2 § 11.) Sompo argues that the discretion granted by section 11 and its general freedom to contract imposes no obligation to continue providing bonds of any amount to BJC. (Doc. 16 at 23-24) Sompo argues it could stop conducting business with BJC for any, or no reason. (*Id.*) BJC counters that the debt that it owed to Sompo prevented BJC from acquiring bonds from any other company and essentially forced it to remain in business with Sompo. (Doc. 23 at 7.)

Sompo also argues that BJC admits that Sompo's alleged unfair settlement practices did not cause the alleged damages. (Doc. 27 at 8.) Sompo partially quotes BJC's complaint in which BJC alleged that its diminished bond capacity was, "a result of BJC's inability to pay Sompo/Lexon . . ." Am. Compl., ¶ 5.6. Sompo takes this language to mean BJC alleged that Sompo violated the UTPA by indemnifying BJC. Sompo mischaracterizes the language in BJC's complaint. The entire quote reads as follows:

> "As a result of BJC's inability to immediately pay Sompo *based on the unfair claim settlement act*, Sompo reduced BJC's bonding capacity resulting in BJC's inability to bid future projects."

(*Id.* emphasis added.) BJC, in fact, alleges that Sompo's unfair claim settlement practices caused the alleged damages rather than simply causing BJC's inability to pay Sompo. BJC has alleged facts that when taken as true lead to the plausible

conclusion that Sompo's alleged violations of Montana Code Annotated 33-18-201 caused BJC to suffer damages.

BJC leans on one Montana Supreme Court case to support its claim to future lost profits caused be a diminished bonding capacity.  In *Lass v. Montana State Highway Commission*, 483 P.2d 699 (Mont. 1971), the State of Montana failed to pay Lass for his work on a highway and this failure caused him to go into debt. Subsequently, Lass's surety decreased his bonding capacity and he could not bid on future projects. The trial court jury awarded Lass $78,000 for future lost profits based on the diminished bonding capacity. (*Id.* at 700.) The Montana Supreme Court affirmed. The Montana Supreme Court reasoned that "the loss of bonding capacity in an entanglement such as the instant case is clearly foreseeable." (*Id.* at 704.)

As Sompo points out, *Lass* is not directly on point. *Lass* dealt with a breach of contract by a third party, the State of Montana, which led a surety to diminish Lass's bonding capacity. Here the, same entity, Sompo, allegedly breached the contract and lowered BJC's bonding capacity. Sompo claims that the current case compares more favorably to *Zook Bros. Construction Company v. State*, 556 P.2d 911 (Mont. 1976), where the Montana Supreme Court struck down future lost profit damages in a case where the State of Montana failed to pay a contractor. The failure to pay forced the contractor to sell his equipment and he was unable to work on other

11

projects. The Montana Supreme Court characterized the alleged loss of future profits as "vague and speculative." (*Id.* at 917).

*Lass* proves more persuasive than *Zook*. The damages in *Lass* were caused by a third party and not the surety. The Court awarded damages for future lost profits based on diminished bonding capacity. Whereas *Zook* involved no sureties and no future lost profits based on diminished bonding capacity. *Lass* is slightly off point, but the fact that a surety was involved and that damages were based on diminished bonding capacity render it more persuasive than *Zook* where those factors are absent. *Lass v. Montana State Highway Comm'n*, 483 P.2d 699, (1971*); Zook Bros. Construction Co. v. State*, 556 P.2d 911 (1976).

Sompo argues that Section 11 and the general freedom to contract relieve Sompo from any obligation to continue providing bonds of any capacity to BJC. Sompo argues that it could stop conducting business with BJC at any time. (Doc. 16 at 23-24.) BJC responds by stating that the debt that it owed to Sompo, prevented BJC from acquiring bonds from any other company. This inability to acquire bonds essentially forced BJC to remain in business with Sompo. (Doc. 23 at 7.) The facts alleged by BJC create a plausible claim for damages based on diminished bonding capacity.

## ORDER

Accordingly, **IT IS ORDERED** that Sompo's Combined Motion (Doc. 15) is **GRANTED, IN PART, AND DENIED, IN PART**. The Court grants Sompo's motion to strike the Jury Demand. The Court denies Sompo's motion to dismiss Count 1 and the alleged damages based on diminished bond capacity.

Dated the 22nd day of July, 2022.

Brian Morris, Chief District Judge
United States District Court